IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARITZA VASQUEZ,

       **Plaintiff,**

    **vs.**                     **Civ. No. 19-1159  JFR**

ANDREW SAUL, Commissioner
of the Social Security Administration,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 20)[2] filed March 16, 2020, in connection with Plaintiff's *Motion to Reverse and/or Remand,* filed June 16, 2020.  Doc.  23.  Defendant filed a Response on August 18, 2020. Doc. 25.  And Plaintiff filed a Reply on August 31, 2020.  Doc. 26.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and shall be **DENIED**.

### I.  Background and Procedural Record

    Plaintiff Maritza Vasquez (Ms. Vasquez) alleges that she became disabled on February 6, 2016, at the age of thirty-six,[3] because of posttraumatic stress syndrome ("PTSD").  Tr. 38, 272, 276.  Ms. Vasquez worked in 2006, 2008 and 2009 as a payroll coordinator, patient care

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 10, 13, 14.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 20), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

[3] Ms. Vasquez initially alleged an onset date of January 1, 2007, but during her Administrative Hearing amended her onset date to February 6, 2016 (the day after the unfavorable decision on her previous disability claim).  Tr. 38.

coordinator, office manager, bookkeeper, and accounting assistant.  Tr. 277.  Ms. Vasquez stopped working on February 27, 2012, due to her conditions.  Tr. 276.

Ms. Vasquez's date of last insured is December 31, 2016.  Tr. 118.  Therefore, to receive benefits, Ms. Vasquez must show she was disabled prior to her date of last insured.  *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir. 1990).

On September 13, 2017, Ms. Vasquez protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr. 245-51.  State Agency medical consultant Jill Blacharsh, M.D., reviewed the relevant medical record evidence[4] at the initial level of consideration and determined there was insufficient evidence to assess Ms. Vasquez's individual limitations and restrictions from her alleged mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings[5] or to assess Ms. Vasquez's ability to do work-related mental activities.  Tr. 127-28.  Absent sufficient evidence, the Administration denied Ms. Vasquez's application at the initial level.  Tr. 117, 118-130, 151-54.

At reconsideration, State Agency medical consultant Stephen Drake, Ph.D., reviewed the relevant medical record evidence and similarly determined there was insufficient evidence to assess Ms. Vasquez's individual limitations and restrictions from her alleged mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental

---

[4] In determining whether Ms. Vasquez was disabled, the relevant period of time is from Ms. Vasquez's alleged onset date, February 6, 2016, and her date of last insured, December 31, 2016.  Tr. 38, 118.

[5] "The psychiatric review technique described in 20 CFR § 404.1520a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."  SSR 96-8p, 1996 WL 374184, at *4.

disorders listings or to assess Ms. Vasquez's ability to do work-related mental activities.  Tr.

145-46.  The Administration again denied Ms. Vasquez's application at reconsideration.  Tr. 131,

133-48, 156-62.

Upon Ms. Vasquez's request for a hearing, Administrative Law Judge (ALJ) Lillian

Richter held a hearing on January 18, 2019.  Tr. 34-95.  Ms. Vasquez appeared in person at the

hearing with attorney representative Benjamin Decker.  *Id*.  On August 15, 2019, ALJ Richter

issued an unfavorable decision.  Tr. 12-28.  On October 17, 2019, the Appeals Council issued its

decision denying Ms. Vasquez's request for review and upholding the ALJ's final decision.  Tr.

1-6.  On December 10, 2019, Ms. Vasquez timely filed a Complaint seeking judicial review of

the Commissioner's final decision.  Doc. 1.

## II.  Applicable Law

### A.    Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income

disability benefits for adult individuals).  The Social Security Commissioner has adopted the

familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria

as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in
> "substantial gainful activity."[6]  If the claimant is engaged in substantial gainful
> activity, she is not disabled regardless of her medical condition.

---

[6] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R.
§§ 404.1572(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have

3

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3).  Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience.  If the Commissioner is unable to make that showing, the claimant is deemed disabled.  If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not

---

less responsibility than when you worked before.  *Id.*  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. §§ 404.1572(b).

disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

     **B.**    **Standard of Review**

     The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

     **III.**  **Analysis**

     The ALJ made her decision that Ms. Vasquez was not disabled at step five of the sequential evaluation.  Tr. 26-27.  The ALJ determined that Ms. Vasquez met the insured status requirements of the Social Security Act through December 31, 2016 (Tr. 17), and that she had

not engaged in substantial gainful activity from her alleged onset date of February 6, 2016, through her date last insured (Tr. 18). She found that Ms. Vasquez had severe impairments of post-traumatic stress disorder, bipolar disorder, degenerative disc disease of the cervical and lumbar spine, and inflammatory polyarthropathy. Tr. 18. She also found that Ms. Vasquez had nonsevere impairments of keratosis pilaris, benign nevi, epilepsy, abdominal pain with diarrhea, and hyperglycemia. Tr. 18-19. The ALJ further found no evidence that Ms. Vasquez's migraines and history of substance abuse, which she found to be severe in her prior decision,[7] were significantly limiting during the relevant period of time at issue here. Tr. 19. The ALJ determined that Ms. Vasquez's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. Tr. 19-21. Accordingly, the ALJ proceeded to step four and found that Ms. Vasquez had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could

> occasionally stoop and crawl, could frequently kneel and crouch, and could never balance. She could frequently climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. She could not operate a motor vehicle as part of her job duties, and she needed to avoid exposure to unprotected heights, hazardous machinery, and workplace hazards such as sharp or hot objects. She could frequently handle and finger bilaterally. Mentally, the claimant could perform simple, routine work. She could occasionally interact with supervisors and coworkers, and could have no interaction with members of the public. She could make work-related decisions in a workplace with few changes in the routing work setting. She could not perform work in tandem with other employees, and could not perform assembly-line production work. She could perform work in a workplace with no more than a moderate noise level.

Tr. 21. The ALJ concluded at step four that Ms. Vasquez was unable to perform any past relevant work through her date of last insured, but that considering Ms. Vasquez's age,

---

[7] ALJ Richter issued an unfavorable decision on February 5, 2016, based on Ms. Vasquez's Title II and Title XVI applications filed on October 9, 2013. Tr. 96-116.

education, work experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that she could perform.  Tr. 26-27.  As such, the

ALJ determined that Ms. Vasquez was not disabled.  Tr. 28.

　　　　In support of her Motion, Ms. Vasquez argues that the ALJ failed to consider critical

evidence in evaluating Ms. Vasquez's subjective complaints with respect to her ability to do

work-related mental activities, failed to properly consider medical opinion evidence related to

Ms. Vasquez's ability to do work-related mental activities, and failed to properly evaluate

whether Ms. Vasquez met the "C" criteria for Listing 12.15.  Doc. 23 at 18-23.  The

Commissioner contends that the ALJ's RFC related to Ms. Vasquez's ability to do work-related

mental activities is supported by substantial evidence, that the ALJ gave good reasons grounded

in the regulations for finding the social workers' opinions unpersuasive, and that Ms. Vasquez's

argument that she meets the criteria for Listing 12.15 is not developed and relies on evidence

outside of the relevant period of time.  Doc. 25 at 6-11.

　　　　The Court will address each issue in turn.

### A.　　Relevant Medical Evidence

　　　　Ms. Vasquez's appeal is focused solely on alleged errors she argues the ALJ made in

determining her ability to do work-related mental activities.  As previously noted, the relevant

period of time for determining whether Ms. Vasquez was disabled is February 6, 2016, through

December 31, 2016.  The medical record evidence during this period of time is limited.

　　　　During the relevant period of time, Ms. Vasquez was receiving mental health care

services at First Nations Community Healthsource.  She attended individual therapy sessions

with two different providers (Judy Venczel, LPCC, and Sandra Johnston, LMHC), group therapy

sessions with Anita Treloar La Cour, Ph.D., and psychiatric sessions with Michelle P. Pent, M.D. Tr. 399-436, 466-73, 1116-17, 1121-22, 1131-37, 1261-63.

### 1.      Michelle P. Pent, M.D.

On February 23, 2016, Ms. Vasquez saw Dr. Pent and reported she was sleeping through the night and had been doing well on a higher dose of Lithium.  Doc. 472-73.  She also reported that she was extremely depressed and upset over her recent denied disability claim and believed that the healthcare providers at First Nations were undermining her by presenting her as more high functioning than she is.  *Id.*  She reported passive suicidal ideation, but indicated she would never do anything because of her son.  *Id.*  On mental status exam, Dr. Pent noted that Ms. Vasquez was awake, alert, and attentive, albeit tearful.  *Id.*  She noted that Ms. Vasquez was groomed, her speech was fluent with regular rate and rhythm, her thought content was linear and organized, and her insight and judgment were appropriate.  *Id.*  She noted that Ms. Vasquez reported a depressed mood and that her affect was reactive and emotive.  *Id.*  Dr. Pent assessed that Ms. Vasquez was extremely upset about her denied disability claim and wanted to continue with her current medication regimen.  *Id.*

On March 23, 2016, Ms. Vasquez saw Dr. Pent and reported no side effects from her medications.  Tr. 470-71.  Ms. Vasquez reported "horrible" depression since being denied disability and stated that "[n]o one understands how I can't function."  *Id.*  Ms. Vasquez also reported that now she was having panic attacks "all the time and everywhere," but that she was able to see a therapist which was helpful.  *Id.*  Dr. Pent noted that Ms. Vasquez was extremely tearful throughout the evaluation.  *Id.*  On mental status exam, Dr. Pent noted that Ms. Vasquez was awake, alert, and attentive.  *Id.*  She noted that Ms. Vasquez was groomed, made good eye contact, and had a pleasant demeanor.  *Id.*  She further noted that Ms. Vasquez's speech was

fluent with regular rate and rhythm, her thought content was linear and organized, her insight and judgment were appropriate, and her affect was reactive.  *Id.*  Ms. Vasquez reported no suicidal ideation and reported her mood as "good."  *Id.*  Dr. Pent assessed that Ms. Vasquez had an ongoing low mood strongly connected to the situational circumstance of not being awarded disability.  *Id.*  Dr. Pent increased Ms. Vasquez's Lamictal.  *Id*.

On June 13, 2016, Ms. Vasquez saw Dr. Pent and reported no side effects from her medications and that she was sleeping through the night.  Tr. 468-69.  Ms. Vasquez reported feeling better since setting limits with her boyfriend's mother.  *Id.*  She also reported that she was not able to leave the house unless someone was with her, but that therapy was helpful for this. *Id.*  On mental status exam, Dr. Pent noted that Ms. Vasquez was awake, alert, attentive, and oriented to person, place and time.  *Id.*  She noted that Ms. Vasquez's speech was fluent with regular rate and rhythm, her thought content was linear and organized, her insight and judgment were appropriate, and her affect was reactive.  *Id.*  Ms. Vasquez reported no suicidal ideation and reported her mood as "okay, a little better."  *Id.*  Dr. Pent assessed an improved mood, and ongoing struggles with agoraphobia which she was working on in therapy.  *Id.*

On September 20, 2016, Ms. Vasquez saw Dr. Pent and reported no medication side effects and sleeping throughout the night.  Tr. 1147.  Ms. Vasquez reported things were going okay and that she was reframing situations and not being so negative.  *Id.*  Ms. Vasquez reported that her depressive symptoms had improved significantly, but that her anxiety remained "debilitating."  *Id.*  She reported keeping busy with her son.  *Id.*  On mental status exam, Dr. Pent noted that Ms. Vasquez was awake, alert, attentive, and oriented to person, place and time.  *Id.* She noted that Ms. Vasquez's speech was fluent with regular rate and rhythm, her thought content was linear and organized, her insight and judgment were appropriate, and her affect was

calm.  *Id.*  Ms. Vasquez reported no suicidal ideation and reported her mood as "pretty good really."  *Id.*  Dr. Pent assessed no acute mood issues and that anxiety related to PTSD seemed to predominate at this point.  *Id.*

On December 13, 2016, Ms. Vasquez saw Dr. Pent and reported no medication side effects and poor sleep.  Tr. 466-67.  Ms. Vasquez denied depression, but stated she was "very sensitive these days."  *Id.*  Dr. Pent noted that Ms. Vasquez was tearful.  *Id.*  Ms. Vasquez reported that her therapy was very helpful and that she continued to ruminate on being denied disability.  *Id.*  She reported difficulties with her son who was in his terrible twos.  *Id.*  Ms. Vasquez requested an increase in her Lithium.  *Id.*  On mental status exam, Dr. Pent noted that Ms. Vasquez was awake, alert, attentive, and oriented to person, place and time.  *Id.*  She noted that Ms. Vasquez's speech was fluent with regular rate and rhythm, her thought content was linear and organized, her insight and judgment were appropriate, and her affect was emotive and tearful.  *Id.*  Ms. Vasquez reported no suicidal ideation and reported her mood as "sensitive." *Id.*  Dr. Pent assessed ongoing anxiety and low mood and that PTSD appeared to be the primary clinical issue.  *Id.*

### 2.   Judy Venczel, LPCC

Ms. Vasquez saw LPCC Venczel from February 29, 2016, through September 26, 2016.

On February 29, 2016, Ms. Vasquez saw LPCC Venczel reporting that she had canceled sessions after her disability claim was denied.  Tr. 1261-1263.  Ms. Vasquez reported feeling like a failure, that her life was a struggle, and that information had been used against her with respect to her disability claim.  *Id.*  She reported not being able to leave her home by herself without "trembling" and experiencing panic, and that she can't stop crying.  *Id.*  LPCC Venczel worked

with Ms. Vasquez to reframe her situation and acknowledge that taking care of her son is a contribution to her family.  *Id.*

On March 29, 2016, Ms. Vasquez presented tearful and depressed and agreed that her symptoms were worse due to having her disability claim denied.  Tr. 435-36.  Ms. Vasquez reported not being able to go anywhere alone.  *Id.*  Ms. Vasquez reported panic attacks.  *Id.* Ms. Vasquez reported feeling no value.  *Id.*  LPCC Venczel challenged Ms. Vasquez lack of value by noting that she is raising and taking care of her son, as well as caring for her sister's children.  *Id.*  LPCC Venczel also discussed ways for Ms. Vasquez to improve her mood and energy level, and wanted to refer Ms. Vasquez to dialectical behavior therapy.  *Id.*  Ms. Vasquez expressed commitment to her current therapy, but did not wish to be referred to another program. *Id.*

On April 5, 2016, Ms. Vasquez presented tearful and depressed and LPCC Venczel identified strategies for finding ways for Ms. Vasquez to become more motivated.  Tr. 433-34.

On April 19, 2016, Ms. Vasquez presented tearful and depressed and reported lots of financial and family stressors.  Tr. 430-32.  She agreed to follow up on LPCC Venczel's recommendations, *i.e.,* couples counseling and cannabis program.

On May 3, 2015, Ms. Vasquez reported more emotional stability.  Tr. 428-29.

On May 9, 2016, Ms. Vasquez was tearful throughout much of session as she discussed feeling trapped by where she lives and financial problems.  Tr. 426-27.

On May 31, 2016, Ms. Vasquez reported that attending group therapy had helped her significantly.  Tr. 424-25.  Ms. Vasquez was tearful discussing relationship issues.  *Id.*  LPCC Venczel worked with Ms. Vasquez on breathing exercises and communicating in a calm manner. *Id.*  Ms. Vasquez found this to be helpful.  *Id.*

On June 6, 2016, Ms. Vasquez reported being able to regulate her emotions and communicate calmly.  Tr. 422-23.  She reported a high level of anxiety when leaving her home and continued to go out in the company of others.  *Id.*

On July 12, 2016, Ms. Vasquez reported that she, her partner, her mother and children went on a vacation.  Tr. 1135-1137.  She reported that she was the primary caretaker throughout. *Id.*  She reported being able to regulate her emotions in the face of several triggers.  *Id.* Ms. Vasquez reported that group therapy was very helpful.  *Id.*

On July 19, 2016, Ms. Vasquez reported making progress in areas of self-confidence and communication skills and verbalized many positive changes in her life.  Tr. 420-21. Ms. Vasquez reports that group therapy was very helpful.  *Id.*  Ms. Vasquez reports that she was able to venture out of the home with less anxiety.  *Id.*

On August 15, 2016, Ms. Vasquez reported improved relationships and that she was able to go to Walmart alone.  Tr. 417-19.  Ms. Vasquez reported that her medications had stabilized her mood, and that she was attending group therapy where she was learning skills to help her regulate her emotions and communicate more effectively in her relationships.  *Id.*

On August 30, 2016, Ms. Vasquez reported being affected by an upsetting media story. Tr. 415-16.  LPCC Venczel discussed identifying areas where she can take control of her life. *Id.*  LPCC Venczel assessed that Ms. Vasquez's PTSD symptoms appeared to have been triggered by violence in the community.  *Id.*

On September 26, 2016, Ms. Vasquez reported being able to trust herself, remain balanced, and maintain judgment during times of stress.  Tr. 413-14.  Ms. Vasquez also reported going to the store by herself, and although she did panic she feels she is making progress.  *Id.*

3.     **Sandra Johnston, LMHC**

On October 21, 2016, Ms. Vasquez saw LMHC Johnston for her first session after transferring care from LPCC Venczel.  Tr. 411-12.  LMHC Johnston reported Ms. Vasquez came in highly anxious, but smiling.  *Id.*  Ms. Vasquez shared some emotionally charged memories after which LMHC Johnston did EMDR (Eye Movement Desensitization and Reprocessing).  *Id.*  LMCH Johnston also did breathing and grounding work.  *Id.*  LMCH Johnston noted that Ms. Vasquez left in a calm, stable state.  *Id.*

On November 10, 2016, Ms. Vasquez saw LMHC Johnston and reported a difficult couple of weeks.  Tr. 409-10.  Ms. Vasquez reported that after her last session she went shopping for computer equipment, laid her wallet on a vehicle, and drove off losing the contents of her wallet.  *Id.*  This event along with the recent election triggered depression and hopelessness about the future and her disability case.  *Id.*  LMHC Johnston noted that Ms. Vasquez was quite emotional throughout the session, crying and talking almost nonstop.  *Id.*  LMHC Johnston noted that Ms. Vasquez left the session in a fairly stable state.  *Id.*

On November 18, 2016, Ms. Vasquez saw LMHC Johnston and reported she was still trying to recover from her wallet being stolen and that she had recently lost her temper with her son.  Tr. 407-08.  LMHN Johnston assessed that Ms. Vasquez was emotional throughout the session, crying softly but talking nonstop.  *Id.*  She noted that Ms. Vasquez was experiencing a great deal of stress, family discord and depression.  *Id.*

On November 30, 2016, Ms. Vasquez reported having a "really nice Thanksgiving" with family coming from California and El Paso.  Tr. 405-06.  She also reported that things were "the same."  *Id.*  LMHC Johnston noted that Ms. Vasquez continued to be unmotivated and depressed.  *Id.*

13

On December 8, 2016, Ms. Vasquez reported doing much better mood wise, but still experiencing depression and anxiety and struggling with completing daily life activities outside the home.  Tr. 403-04.

On December 13, 2016, Ms. Vasquez came in stable and became teary when talking about past domestic abuse and time spent in prison.  Tr. 401-02.  She stabilized toward the end of the session and acknowledged her resiliency.  *Id.*

On December 27, 2016, Ms. Vasquez reported having a good Christmas for the most part. Tr. 399.  She reported not crying as much or feeling as overly emotional.  *Id.*

### 4.   Anita Treloar La Cour, Ph.D.

On May 4, 2016, Ms. Vasquez participated in the first session of Seeking Safety Group led by Dr. La Cour.  Tr. 1116-1117.  Dr. La Cour noted that Ms. Vasquez was anxious, pleasant, interested, and friendly.  *Id.*  Ms. Vasquez reported being very anxious and depressed since a very humiliating administrative hearing on her disability claim and subsequent denial.  *Id.*  She reported passive suicidal ideation over the weekend, but slept to get through it.  *Id.*  Ms. Vasquez reported she is motivated to get her life back on track and be more stable for her son and nieces and nephews.  *Id.*  Ms. Vasquez reported planning to work exercise back into her life by going on walks with her nieces and nephews.  *Id.*  Dr. La Cour noted Ms. Vasquez's participation as animated, talkative, motivated, and appropriately self-disclosing.  *Id.*

On May 11, 2016, Ms. Vasquez participated in the Seeking Safety Group.  Tr. 1121-22. Dr. La Cour noted that Ms. Vasquez was pleasant, interested, and thoughtful.  *Id.*  Ms. Vasquez reported fatigue from physical impairments and caring for her two year old son.  *Id.*  Dr. La Cour noted that Ms. Vasquez's participation was animated, talkative, thoughtful, motivated, and appropriately self-disclosing.  *Id.*

14

On June 15, 2016, Ms. Vasquez participated in the Seeking Safety Group.  Tr. 1131-32.
Dr. La Cour noted that Ms. Vasquez was pleasant, interested, and thoughtful.  *Id.*  She noted that
Ms. Vasquez reported using acupuncture pressure points to help with anger and anxiety, but
stated that she had not found a way to stop herself from being verbally aggressive once she
becomes angry.  *Id.*  Ms. Vasquez also reported that she does not feel safe leaving the house
alone and does not trust anyone to be a friend.  *Id.*  Ms. Vasquez nonetheless reported being
motivated.  *Id.*  Dr. La Cour noted that Ms. Vasquez's participation was animated, talkative,
thoughtful, motivated, and appropriately self-disclosing.  *Id.*

On June 29, 2016, Ms. Vasquez participated in the Seeking Safety Group.  Tr. 1133.
Dr. La Cour noted that Ms. Vasquez was pleasant, interested, and thoughtful.  *Id.*  She noted that
Ms. Vasquez reported feeling "okay," and feeling more stable since getting her medical cannabis
card which helps to manage her anxiety.  *Id.*  Ms. Vasquez also reported improvement in her
family relationships.  *Id.*  Dr. La Cour noted that Ms. Vasquez's participation was animated,
talkative, thoughtful, motivated, and appropriately self-disclosing.  *Id.*

### B.  The ALJ Did Not Pick and Choose From the Evidence

Ms. Vasquez first argues that the ALJ failed to consider critical evidence in evaluating
her subjective complaints and that the ALJ engaged in picking and choosing and relied upon
evidence that favored a finding of nondisability.  Doc. 23 at 18-20.  In particular, Ms. Vasquez
argues that the ALJ disregarded critical evidence from First Nations Community Healthsource
and Samaritan Counseling that supported disabling limitations.  *Id.*  The disregarded evidence,
Plaintiff asserts, included her consistent crying throughout therapy session; her persistent
difficulty sleeping due to nightmares and intrusive thoughts regarding past trauma; her routine
presentation at therapy sessions as anxious, upset, and tired; her panic attacks that kept her

captive in her car and unable to grocery shop by herself; and her passive suicidal ideations.  *Id.*
Plaintiff states the ALJ failed to consider that she experiences these symptoms even in the face of
medication compliance.  *Id.*

The Commissioner contends that the ALJ's mental RFC finding is supported by
substantial evidence.  Doc. 25 at 6-7.  The Commissioner asserts that the relevant time period
here is brief, and that there were no time-relevant opinions that Ms. Vasquez had significant
mental limitations or that her mental symptomology rendered her unable to work.  *Id.*  The
Commissioner notes that mental status examinations from 2016 demonstrate that Ms. Vasquez
was alert, attentive, and fully oriented; exhibited organized and linear thought processes and
speech; displayed appropriate insight, judgment, and attention; and denied suicidal ideation or
psychotic symptoms.  *Id.*  The Commissioner further notes that the ALJ points to Ms. Vasquez's
reports of activities of daily living, such as caring for her child and nieces and nephews,
traveling, going to the gym, and going to the casino once a month to gamble.  *Id.*  The
Commissioner also notes that much of the "disregarded evidence" upon which Ms. Vasquez
relies is outside of the relevant period of time.  *Id.*

It is improper for an ALJ to pick and choose among medical reports, using portions of
evidence favorable to her position while ignoring other evidence.  *Hardman v. Barnhart*, 362
F.3d 676, 681 (10th Cir. 2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)).
The ALJ did not do so here.  To the contrary, the ALJ discussed that Ms. Vasquez reported in
sessions with her counselors

> "up and down" moods, panic attacks, low self-esteem, guilt, sleep disturbance,
> hypersensitivity to loud noises, and intrusive memories of past traumatic events
> such as domestic abuse by her former husband and sexual assault during an
> incarceration.  She has stated that she becomes very anxious in public and therefore
> tends to leave only in the company of others.  She has expressed sadness and
> frustration because she does not feel that she is where she "should be" at this stage

of her life.  . . .  Shortly after the undersigned denied the claimant's prior disability claim, she complained that "no one [understood] how [she could not] function" [].  In subsequent sessions she "continu[ed] to ruminate on being denied disability," and she complained that her clinicians did not "adequately document and understand her fears when she is in public and how they [made it so she could not] work" [].   Consistent with claimant's symptoms, her mental-health providers occasionally have observed her to be anxious or tearful when she discusses her past, her symptoms, and her stressors and other triggers [].

Tr. 23.  The ALJ further discussed, however, that the medical evidence did not establish that

Ms. Vasquez lacked the mental capacity to work during the relevant period, or that she had

become mentally disabled since then.  In support the ALJ noted that

the evidence shows that the claimant's thought processes consistently have been logical, linear, organized, and goal-directed.  Her insight and judgment have been fair to good.  Her thought content has been normal.  Her speech has been fluent and coherent, her demeanor has been cooperative, and her psychomotor behavior has been normal.  Records from group therapy sessions throughout 2016 reflect that the claimant as pleasant, interested, friendly, thoughtful, talkative, motivated, and appropriately self-disclosing [].   In office visits for medical complaints, the claimant's psychological presentation consistently has been normal [].

Notably, the claimant has reported that treatment improves her symptoms.  In 2016, she reported that therapy provided her with skills to help her regulate her emotions, learn new communicative strategies, stay balanced, and maintain sound judgment in stressful times. . . .

Tr. 23-24.  The medical evidence record supports these findings.  Tr. 466-73, 1116-17, 1121-22,

1131-32, 1133, 1147.

The ALJ also appropriately discussed that Ms. Vasquez's activities of daily living were

inconsistent with her statements regarding intensity, persistence, and limiting effects of her

symptoms.  *See* SSR 16-3p, 2017 WL 5180304, at *8 (describing factors, such as daily activities

and effectiveness of medications, that an ALJ considers in addition to medical and statement

evidence when determining consistency of claimant's statements regarding intensity, persistence,

and limiting effects of her symptoms).  Here, the ALJ notes that during the relevant period of

time, Ms. Vasquez took a family vacation, cared for her son, provided regular care for her

sister's children, attended doctor's appointments by herself, picked up her son from school, went

to the gym with her father, went to the casino either by herself or with her boyfriend or mother,

shopped for necessities, participated in her medication management, and reported her medication

regimen was beneficial.  Tr. 24.  The record supports these findings.  Tr. 62-63, 65, 71-72, 75,

78-80, 409-10, 411-12, 413-14, 417-19, 420-21, 435-36, 472-73, 1133, 1135-37.

The Court's review of the medical record evidence additionally demonstrates that during

the relevant period of time Ms. Vasquez routinely reported sleeping through the night (Tr. 468-

69, 472-73, 1147); that but for one weekend of passive suicidal ideation following the denial of

her previous disability claim she reported no suicidal ideation during the relevant period of time

(Tr. 466-73, 1147); and that despite some struggles with agoraphobia in early 2016, as the year

progressed Ms. Vasquez reported going to stores and shopping by herself, albeit with some

anxiety.  Tr. 409-10, 413-14, 420-21.

Lastly, as noted by the Commissioner, the evidence upon which Ms. Vasquez relies in

support of her argument largely falls outside of the relevant period of time.

In sum, Plaintiff essentially asks this Court to reweigh the evidence, which it cannot do.

*See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir 2007) ("We review only the sufficiency

of the evidence, not its weight . . . .  Although the evidence may also have supported contrary

findings, we may not displace the agency's choice between two fairly conflicting views[.]").

Here, the ALJ demonstrated she considered all the evidence, even though she may not have

discussed every piece of evidence.  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)

(explaining that the record must demonstrate that the ALJ considered all of the evidence, but an

ALJ is not required to discuss every piece of evidence).  Because the Court finds that the ALJ's

decision is supported by substantial evidence, and because Plaintiff's argument goes to the weight of the evidence and not its sufficiency, the Court will not displace the ALJ's decision.

### C.   The ALJ Properly Considered the Medical Opinion Evidence

Ms. Vasquez next argues that the ALJ failed to properly consider the medical opinions of Ayesha Rodrigues Sundram, LCSW, and Natty Plunkett, LMFT, two of her therapists.  Doc. 23 at 20-22.

LCSW Sundram opined on January 16, 2019, that "it is apparent that Ms. Vasquez is quite limited in her functioning due to her trauma history and PTSD symptoms."  Doc. 23 at 20, Tr. 932.  The ALJ found Ms. Sundram's opinion unpersuasive as to the relevant period of time because (1) her first encounter with Plaintiff was a year after her date last insured; (2) her opinions are based primarily on Plaintiff's subjective symptoms in counseling sessions since mid-2018; (3) her opinions are inconsistent with Plaintiff's ability to perform activities of daily living; and (4) that her opinions are not made in vocationally relevant terms.  Tr. 25. Ms. Vasquez argues that the ALJ failed to consider the significant amount of evidence that tends to support Ms. Sundram's opinions such as therapy records from First Nations Community Healthsource, Samaritan Counseling Center, and Inner Path Wellness demonstrating constant crying, difficulty with emotional regulation, frequent struggles with agoraphobia, difficulty sleeping, and panic attacks.  *Id.*  Ms. Vasquez further argues that although Ms. Sundram's opinion may not be relevant to Plaintiff's functioning prior to her date last insured, it remains relevant to Plaintiff's supplemental security income claim.[8]

As for Natty Plunkett, LMFT, she opined on January 16, 2019, that

[c]omorbidity between chronic post traumatic stress disorder and bipolar disorder significantly compound Maritza's barriers to functioning such that she is frequently

---

[8] Ms. Vasquez states in her Reply that she mistakenly represented she had filed an SSI claim.  Doc. 26 at 3, n. 2.

unable to engage in public settings without a family member present.  In the home, the predominantly depressive features of Maritza's experience with bipolar disorder resulting [sic] episodes of being unable to sustain tasks for extended periods.  She also suffers from disrupted sleep associated with her mental health status.  These psychosocial and sleep accommodation needs may be unfeasible in the workplace.  My recommendation at the present time is for Maritza to prioritize her engagement with healthcare services and refrain from undertaking a transition to the potentially unsuitable environment of the workforce.

Tr. 930.  The ALJ found LMFT Plunkett's opinions unpersuasive because (1) they are unsupported by evidence of intact cognition, good response to mental health treatment and (2) Plaintiff's ability to complete activities of daily living "despite her abstention from her medications; and (3) "may be unfeasible" and "potentially unsuitable" are speculative and vague. Tr. 25.  Ms. Vasquez argues the ALJ's rationale for finding LMFT Plunkett's opinion unpersuasive is flawed because the ALJ overlooked that Ms. Vasquez has presented with "cognitive distortions" and rapid speech at several of her therapy sessions; that she continues to cry throughout therapy sessions and have panic attacks despite having a "good response" to mental health treatment; and that she abstained from taking medication while pregnant and breastfeeding.  Doc. 23 at 21-22.  Ms. Vasquez also argues that to the extent the ALJ found LMFT Plunkett's opinion speculative and vague, the ALJ should have developed the record in order to clarify LMFT Plunkett's opinions.  *Id.*

The Commissioner contends that the ALJ's evaluation of the medical opinion evidence is supported by substantive evidence, and that the ALJ gave good reasons grounded in the regulations for finding the social workers' opinions unpersuasive.  Doc. 25 at 8-10.  The Commissioner contends that neither of the social workers at issue here rendered an opinion during the relevant period of time and that their opinions were dated more than two years after Ms. Vasquez was last insured.  *Id.*  The Commissioner asserts that LCSW Sundram first saw Ms. Vasquez in August 2018 and had no time-relevant knowledge of Ms. Vasquez's alleged

20

mental impairments.  *Id.*  The Commissioner further asserts that LMFT Plunkett, who was providing couples counseling to Ms. Vasquez and her spouse, similarly did not provide mental health services to Ms. Vasquez during the relevant period of time.  *Id.*  The Commissioner contends, therefore, that the ALJ properly considered that their opinion evidence was inconsistent with the time-relevant medical evidence and with Ms. Vasquez's daily activities.  *Id.* In addition, the Commissioner argues that the ALJ properly determined that Ms. Vasquez's subjective complaints, which LCSW Sundram relied upon, were not supported by objective findings in the medical evidence record.  *Id.*  Lastly, the Commissioner argues that it was appropriate for the ALJ to consider the social workers' familiarity with disability regulations and to discount opinion statements that directed a determination of disability, which is a responsibility left to the ALJ.  *Id.*

The parties agree that because Ms. Vasquez filed her claim after March 27, 2017, the ALJ properly evaluated the medical opinions and prior administrative findings under the revised regulations, found in 20 C.F.R. § 404.1520c.  Claims filed prior to that date were evaluated under the previous regulation, i.e., 20 C.F.R. § 404.1527.  The revised regulations differ from the prior rules in several relevant respects.  First, the current regulations expand on the definition of an acceptable medical source and include, relevant to this opinion, licensed physicians, licensed psychologists, and licensed advanced practice nurses. *See* 20 C.F.R. § 404.1502.  Second, under the prior rules, medical opinions were weighted differently depending on the medical source's relationship to the claimant.  *See* 20 C.F.R. § 404.1527(c)(1)-(2) (according "more weight" to the opinions of an examining source than a non-examining source and "controlling weight" to a treating source's well-supported opinions that are "not inconsistent with the other substantial evidence" of record).  The current rules place no special weight on opinions offered by a treating

source or otherwise.  *See* 20 C.F.R. § 404.1520c(a) (providing that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)").  "Instead, medical opinions and [prior administrative medical] findings are evaluated for their persuasiveness according to a uniform set of considerations."  *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (citing 20 C.F.R. § 416.920(c)).

The evaluation of these considerations comprises the third relevant difference between the two sets of regulations.  While the considerations "are similar under the prior and current rules, *compare* 20 C.F.R. §§ 404.1520c(c) *with* 20 C.F.R. §§ 404.1527(c), the prioritization of the factors and requirements for articulating how an adjudicator consider[s] each factor differ."  *Silva v. Saul*, No. CV 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020).  The five factors to consider include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)-(5).  Previously, an adjudicator gave special consideration to a source's relationship to a client. *See, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Silva*, 2020 WL 4220862, at *4.  The current regulations, however, provide that the factors of supportability and consistency are "[t]he most important factors" in considering "the persuasiveness of medical opinions and prior administrative findings...."  20 C.F.R. § 404.1520c(a).  In determining how persuasive opinions and findings are, an ALJ must "explain how [she] considered the supportability and consistency factors ... but [is] not required to[ ] explain how [she] considered the [remaining] factors...." 20 C.F.R. § 404.1520c(b)(2).

The Tenth Circuit has explained that the relevant question in the face of a retrospective diagnosis is whether there is evidence of actual disability prior to the expiration of a claimant's

insured status.  *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir.

1990); *see also Bird v. Commissioner of Social Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012)

(finding that post-dated-last-insured medical evidence generally is admissible in a Social

Security disability determination in such instances in which that evidence permits an inference of

linkage with the claimant's pre-DLI condition).  Here, the parties do not contend that LCSW

Sundram or LMFT Plunkett were retrospectively *diagnosing* any mental impairments.  Instead,

the issue is whether their opinions regarding Ms. Vasquez's limitations in 2019 apply

retrospectively to Ms. Vasquez's ability to do work-related mental activities during the relevant

period of time.  Relying on *Potter* for guidance, the relevant question then is whether the record

contains evidence during the relevant period of time such that the 2019 limitations they described

could apply to Ms. Vasquez's pre-DLI condition.

      As an initial matter, Ms. Vasquez concedes that LCSW Sundram's opinion may not be

relevant to her functioning prior to her date of last insured.  That aside, the ALJ properly

determined that the medical record evidence during the relevant period of time is inconsistent

with both LCSW Sundram's and LMFT Plunkett's 2019 opinions.  Both LCSW Sundram and

LMFT Plunkett opine that Ms. Vasquez is functionally limited because she requires a family

member to accompany her on everyday errands and attending doctor appointments, that she deals

with frequent flashbacks and nightmares, and suffers from disrupted sleeps associated with her

mental health status.  Docs. 930, 932.  While these limitations may be true as of the time the

social workers rendered their opinions in early 2019, the medical record evidence during the

relevant period of time demonstrates that Ms. Vasquez routinely reported sleeping through the

night (Tr. 468-69, 472-73, 1147); and that despite some struggles with agoraphobia early in

2016, as the year progressed Ms. Vasquez reported she was able to venture out of her home with

less anxiety and was going to stores and shopping by herself (Tr. 411-12, 413-14, 420-21).  And

notably, none of the mental health treatment notes during the relevant period of time indicate that

Ms. Vasquez was accompanied to her counseling or group therapy appointments by a friend or

family member, nor do they indicate that Ms. Vasquez reported frequent flashbacks and

nightmares that disrupted her sleep.  Moreover, the evidence upon which Ms. Vasquez relies to

support her argument is outside of the relevant period of time.[9]  As such, the record does not

contain substantial evidence to support an inference that LCSW Sundram's and LMFT Plunkett's

described limitations in their 2019 opinions related to Ms. Vasquez's pre-DLI condition.

Further, as the ALJ indicated, LMFT Plunkett's opinion was not consistent with

Ms. Vasquez's "intact cognition, good response to mental-health treatment, or her abilities to

accomplish daily activities despite her abstention from her medications []."[10]  Tr. 25.  The record

supports this finding.  Tr. 466-73, 1147.  The ALJ also indicated that LCSW Sundram's opinion

relied on Ms. Vasquez's subjective complaints in counseling sessions *since mid-2018* (after the

relevant period of time) and was inconsistent with Ms. Vasquez's activities of daily living during

the relevant period of time.  The record supports this finding.  Tr. 62-63, 65, 71-72, 75, 78-80,

409-10, 411-12, 413-14, 417-19, 420-21, 435-36, 472-73, 1133, 1135-37.

Lastly, the ALJ correctly noted that neither LCSW Sundram's or LMFT Plunkett's

opinions described Ms. Vasquez's mental limitations in vocational terms.  Tr. 25.  A medical

opinion is defined as "statements from acceptable medical sources that reflect judgment about

the nature and severity of your impairment(s), including your symptoms, diagnosis, and

---

[9] Ms. Vasquez cites records from 2017, after her date of last insured.  Doc. 23 at 22.

[10] Ms. Vasquez testified at the Administrative Hearing on January 18, 2019, that she had been off of her medications for the previous ten months during which time she was pregnant and now breastfeeding her newborn daughter.  Tr. 42-43.

prognosis, *what you can still do despite impairment(s), and your physical or mental restrictions*."
20 C.F.R. § 404.1527(a)(1) (emphasis added).  Neither of their opinions included this
information.  *See* 20 C.F.R. 404.1520c(c)(5) (the ALJ will consider a medical source's
understanding of disability program's policies and evidentiary requirements when determining
whether a medical opinion is supported).  The ALJ also correctly noted that LMFT Plunkett had
used terms such as "may be unfeasible"[11] and "potentially unsuitable"[12] in her opinion that were
speculative and vague.[13]  Tr. 25.  Medical assessments that "go beyond purely medical findings
to reach 'issues reserved to the Commissioner'—such as the claimant's RFC ... and the ultimate
question of disability—'are not medical opinions.'"  *Lakey v. Barnhart*, No. 04-7041, 127 Fed.
Appx. 455, 457 (10th Cir. April 5, 2005) (unpublished) (citing 20 C.F.R. § 404.1527(e)).  Indeed,
"the agency will not give any special significance to the source of an opinion on issues reserved
to the Commissioner."  *Id.* (internal citations omitted).  As such, the ALJ's reasons for finding
their opinions unpersuasive on these bases are supported by substantial evidence.

---

[11] LMFT Plunkett opined that Ms. Vasquez's psychosocial and sleep accommodation needs "may be unfeasible" in the workplace.  Tr. 930.

[12] LMFP Plunkett recommended that Ms. Vasquez should prioritize her engagement with healthcare services and refrain from undertaking a transition to the "potentially unsuitable" environment of the workforce.  Tr. 930.

[13] Ms. Vasquez argued, without more, that the ALJ had a duty to develop the record.  *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (finding that arguments raised in a perfunctory manner are waived) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)).  Tenth Circuit case law instructs that an ALJ need only recontact a treating source for clarification "[i]f evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir 2004); *see also White v. Barnhart*, 298 F.3d 903, 908 (10th Cir. 2001) (the ALJ's duty to recontact the treating physician is triggered where the information received is inadequate and so incomplete that it cannot be considered).  Further, under the current regulations, evidence, including medical opinions, is considered insufficient when it does not contain all the information needed to make a determination or a decision whether a claimant is disabled. 20 C.F.R. § 404.1520b.  In that case, an ALJ *may* recontact a treating/medical source, *inter alia*, if after weighing all the evidence she cannot reach a conclusion about whether a claimant is disabled. 20 C.F.R. § 404.1520b(b)(1)(i).  Here, the ALJ determined that the post-dated opinion evidence was inconsistent with the medical evidence record during the relevant period of time.  Ms. Vasquez, therefore, has failed to provide meaningful argument regarding the ALJ's duty to develop the record in light of this finding.

D.     **Any Error At Step Three Is Harmless**

Lastly, Ms. Vasquez argues that the ALJ failed to properly explain why Ms. Vasquez did

not meet the "C" criteria for Listing 12.15, *Trauma – and stressor-related disorders*.  Doc. 23 at

22-23.  Relying on evidence that largely falls outside of the relevant period of time, Ms. Vasquez

argues in a conclusory fashion that there was ample evidence in the record that she met the "C"

criteria based on her history of mental health treatment, that her symptoms improved with

treatment, and that she has an inability to adjust to new places and environments.  *Id*.  As such,

Ms. Vasquez asserts that the ALJ erred at step three.

The Commissioner contends that Ms. Vasquez has failed to support her argument with

any meaningful factual or legal analysis and the Court, therefore, should consider it waived.

Doc. 25 at 10-11.  In the alternative, the Commissioner asserts that the medical record evidence

Ms. Vasquez relies upon to support her argument is from outside of the relevant period of time.

*Id.*  As such, the Commissioner argues the Court should reject this argument.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to

one of a number of listed impairments that the Secretary acknowledges as so severe as to

preclude substantial gainful activity."  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)

(quotation omitted).  The ALJ's step three finding should discuss the evidence and explain why

the ALJ found that the claimant was not disabled at that step.  *Id*.  Here, the ALJ stated as

follows:

> The undersigned has also considered whether the paragraph C criteria are satisfied.
> The C criteria of listings 12.04 and 12.15 require evidence of (1) medical treatment,
> mental-health therapy, psychosocial supports, or a highly structured setting that is
> ongoing and diminishes the symptoms and signs of the claimant's mental disorder;
> and (2) marginal adjustment, e.g., a minimal capacity to adapt to changes in the
> environment or to demands that are not already part of the claimant's daily life. The
> evidence fails to establish the presence of these C criteria.

Tr. 20.  To meet the listing criteria for 12.15 requires:

A.  Medical documentation of *all* of the following:

    1.  Exposure to actual or threatened death, serious injury, or violence;

    2.  Subsequently involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

    3.  Avoidance of external reminders of the event;

    4.  Disturbance in mood and behavior; and

    5.  Increase in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F)

    1.  Understand, remember, or apply information (see 12.00E1).

    2.  Interact with others (see 12.00E2).

    2.  Concentrate, persist, or maintain pace (see 12.00E3).

    4.  Adapt or manage one (see 12.00E4).

OR

C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); *and*

    2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1 at 12.15.  The regulations further state that

2.     *Paragraph C criteria.*

    a.    We find a mental disorder to be "serious and persistent" when there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that your disorder satisfied both C1 and C2.

    b.    The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder [].  We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition.  We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder.  If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by this paragraph.

    c.    The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment.  "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.  We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports [].  Such deterioration may have necessitated a significant change in medication or other treatment.  Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

Pt. 404, Subpt. P, App. 1, G.2. *What are the paragraph C criteria, and how do we use them to evaluate your mental disorder*?

As an initial matter, the Court agrees that Ms. Vasquez raised her step three argument in a perfunctory manner. *See Tietjen v. Colvin*, 527 F. App'x 705, 709 (10th Cir. 2013) (finding that arguments raised in a perfunctory manner are waived) (citing *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002)).  In doing so, Ms. Vasquez failed to provide any meaningful argument and instead globally pointed to 494 pages of evidence in support of her argument of which only 75 pages address the relevant period of time.

That aside, even if the ALJ failed to provide an accompanying analysis of why Ms. Vasquez did not meet the "C" criteria, in this case any failure to do so is harmless error due to a lack of evidence to conclude otherwise.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 734-35 (10th Cir. 2005) (finding that an insufficient step three finding is harmless error when the step four and five findings "conclusively preclude [a c]laimant's qualification under the listings at step three"); *Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. 2015) (unpublished) (finding that an insufficient step three analysis was harmless when the "RFC finding negates the possibility of any finding that [the claimant] is conclusively disabled at step three," and the claimant failed to "satisf[y] all of the Listing's criteria.").  Here, the evidence during the relevant period of time does not demonstrate that Ms. Vasquez was unable to function outside of her home or only able to engage in activities of daily living with "substantial psychosocial support." Tr. 62-63, 65, 71-72, 75, 78-80, 409-10, 411-12, 413-14, 417-19, 420-21, 435-36, 472-73, 1133, 1135-37.  As such, the evidence negates the possibility of any finding that Ms. Lovato was conclusively disabled at step three.

For the foregoing reasons, the Court finds that Ms. Vasquez presented her step-three argument in a perfunctory manner and that any insufficiency in the ALJ's step-three analysis is harmless error based on the ALJ's findings at steps 4 and 5 which are supported by substantial evidence.

## IV.  Conclusion

For all of the reasons stated above, Ms. Vasquez's Motion to Reverse and/or Remand (Doc. 23) is **DENIED.**

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**